IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Wasabi Japanese Restaurant, Inc., | ) | |
| | ) | C.A. No. 6:05-1643-HMH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Chai, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Wasabi Japanese Restaurant, Inc.'s ("Wasabi") motion for a preliminary injunction. For the reasons below, the court denies Wasabi's motion for a preliminary injunction.[1]

## I. FACTUAL & PROCEDURAL BACKGROUND

On or about July 1, 2001, Wasabi opened a traditional Japanese restaurant serving sushi in Spartanburg, South Carolina, under the name "Wasabi." (Pl's. Mem. Supp. Prelim. Inj. 2.) After opening, Wasabi engaged in substantial advertising efforts to promote its business, and the restaurant and its sushi chef and owner, Manshing Katsu So ("Katsu So"), have been featured in local publications. (Id. 2-3 & Ex. 1 (Katsu So Aff. 3).) On October 20, 2004, Wasabi applied to the Secretary of State for the State of South Carolina to register the "Wasabi" mark for restaurant services. (Id. at 4.) The Secretary of State granted the registration on October 22, 2004. (Id.)

---

[1]The court finds that oral argument is unnecessary for resolution of Wasabi's motion.

1

Approximately eight months after Wasabi opened in Spartanburg, on or about March 1, 2002, a company unrelated to Wasabi, Oozora Inc. ("Oozora"), opened a sushi restaurant in Easley, South Carolina, under the service name "Wasabi Japanese Restaurant and Sushi Bar."[2]  (Def.'s Mem. Opp'n Prelim. Inj. 1.)  The owners of Oozora were unaware of the Wasabi restaurant in Spartanburg when Oozora opened its restaurant in Easley.  (Id. Ex. 1 (Aff. Cheng Hai Yap ¶ 7).)

In April 2004, Cheng Hai Yap ("Yap") and his business partner Andy S. Anraku ("Anraku"), the owners of Oozora, decided to open a Japanese sushi restaurant in Greenville.  (Id. (Yap Aff. ¶ 5).)  The new restaurant in Greenville was to be owned and operated by Chai Inc. ("Chai"), of which Oozora and Yap are partial owners.  (Id. (Yap Aff. ¶¶ 1, 5.)  At the end of 2004 or early 2005, Chai began renovating a building in Greenville, South Carolina, for the restaurant.  (Pl.'s Mem. Supp. Prelim. Inj. 4.)  The plywood wall surrounding the building had "Wasabi" painted upon it.  (Id.)  Wasabi alleges that this writing on the wall confused Wasabi's customers, and numerous customers allegedly asked Katsu So whether Wasabi was opening another restaurant in Greenville.  (Id. & Ex. 1 (Aff. of Katsu So 4).)

On February 24, 2005, Wasabi's attorney wrote to the Wasabi Japanese Restaurant and Sushi Bar in Easley and notified the restaurant that Wasabi was the first to use the "Wasabi" mark in South Carolina, that Wasabi had registered the mark, and that Wasabi's

---

[2]Wasabi argues that the Easley restaurant did not open until after October 8, 2002, when Oozora was granted a business license by the city of Easley.  Nonetheless, it is undisputed that Oozora was using the name Wasabi Japanese Restaurant and Sushi Bar in 2002, at least two years before Wasabi obtained its South Carolina trademark registration of the name "Wasabi."

2

customers had been confused by the restaurant renovation in Greenville. (Id. 4.) On April 13, 2005, Wasabi Japanese Restaurant and Sushi Bar acknowledged the letter and informed Wasabi that Anraku, the proprietor of the new restaurant in Greenville[3], planned to use the mark "Sushi Wasabi" for the Greenville restaurant. (Id.) On April 12, 2005, Oozora applied to the Secretary of State for the State of South Carolina for the trademark "Sushi Wasabi," which was granted to Oozora on June 6, 2005. ( (Def.'s Mem. Opp'n Prelim. Inj. 11 & Ex., 1 (Yap Aff. ¶ 4 & Trademark Registration Certificate).) Chai opened Sushi Wasabi to the public on June 27, 2005. (Pl.'s Mem. Supp. Prelim. Inj. Ex. 1 (Yap Aff. ¶ 5).)

Wasabi filed the instant action on June 9, 2005, alleging unfair competition, infringement of common law trademark rights, and infringement on Wasabi's South Carolina trademark registration. Wasabi further moved for a preliminary injunction, seeking to enjoin Sushi Wasabi from (1) "[p]roviding or offering to provide restaurant services in the city of Greenville, South Carolina, under the service mark WASABI, SUSHI WASABI or variation thereof incorporating the word 'wasabi'"; and from (2) "[d]isplaying WASABI, SUSHI WASABI or variation thereof incorporating the word 'wasabi' on any restaurant in the city of Greenville, South Carolina." (Id. 1-2.) Chai filed a memorandum in opposition to Wasabi's motion on July 20, 2005.

---

[3]Anraku's ownership interest in Chai appears to be via his interest in Oozora, though this is somewhat unclear.

## II. LEGAL DISCUSSION

"In determining whether to grant a preliminary injunction, a court must balance: (1) the likelihood of irreparable harm to the plaintiff if the injunction is denied; (2) the likelihood of harm to the defendant if it is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest." Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Pub. Sch., 373 F.3d 589, 593 (4th Cir. 2004). Each of the four above factors will be considered in turn.

1. Likelihood of Irreparable Harm to the Plaintiff if the Injunction is Denied

Wasabi argues that it will be harmed by Chai's use of the "Sushi Wasabi" mark because, given similarities between "Wasabi" and "Sushi Wasabi," consumers "will think that Defendants' [sic] Japanese restaurant and sushi bar is affiliated, connected or sponsored by Plaintiff's Japanese restaurant and sushi bar." (Pl.'s Mem. Supp. Prelim. Inj. 6.) Accordingly, "[A]ny shortcoming in quality of Defendants' [sic] food and service, will adversely affect Plaintiff; yet there is nothing Plaintiff can do to control Defendants' [sic] activities." (Id.) In response, Chai asserts that Wasabi's alleged irreparable harm is overly speculative, that Wasabi's delay in bringing its claim for approximately four months negates its contention of irreparable harm, and that any harm that Wasabi suffers would translate into a loss of business and could be compensated by damages. (Def.'s Mem. Opp'n Prelim. Inj. 4-6.)

The court finds that Wasabi has failed to show irreparable harm. Wasabi quotes Federal Express Corp. v. Federal Expresso, Inc., 201 F.3d 168, 174 (2d Cir. 2000), for the proposition that "proof of a likelihood of confusion would create a presumption of irreparable

4

harm, and thus a plaintiff would not need to prove such harm independently." (Pl.'s Mem. Supp. Prelim. Inj. 6.) While Wasabi may be able to prevail on its claims at trial, to date Wasabi has failed to prove the likelihood of confusion, identifying little evidence to support its claim that its customers have been confused by the opening of Sushi Wasabi in Greenville or that they will likely be confused in the future, as discussed in Part II.3. Without a stronger showing of actual or likely confusion, Wasabi's claim that it will be irreparably damaged if a consumer has a negative experience at Sushi Wasabi is speculative and fails to sufficiently support the conclusion that Wasabi would suffer "irreparable damage" if a preliminary injunction is not granted. As such, this factor weighs against issuing a preliminary injunction.

More significantly, it is undisputed that Wasabi knew of Chai's intent to use the name "Wasabi" in February 2005, but did not bring suit to enjoin Chai's usage of the mark until June 9, 2005. In fact, Wasabi knew of Chai's intent to use "Wasabi" on the Greenville restaurant even earlier, when it became aware that "Wasabi" was painted on the boards outside of the building being renovated for the restaurant. Wasabi's delay in seeking an injunction weighs against Wasabi's allegation that it will suffer irreparable damage if the preliminary injunction does not issue. See Comic Strip, Inc. v. Fox Television Stations, Inc., 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (finding that delaying for months in moving for preliminary injunction undermines a claim of irreparable damage); see also Citibank N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (stating that "delay in seeking enforcement of . . . rights [via a preliminary injunction] . . . tends to indicate at least a reduced need for such drastic, speedy action.") Even if the court gives Wasabi credit for attempting to settle the dispute without filing for an injunction, Chai indisputably put Wasabi on notice of Chai's

5

position that it was going to use "Sushi Wasabi" with its letter on April 13, 2005, two months before Wasabi filed its motion for preliminary injunction.[4]

Finally, Wasabi argues that the damages will be irreparable because they will be difficult to ascertain and redress. However, as set forth above, Wasabi has not sufficiently shown that customers have been or will likely be confused by the two restaurants' names such that a negative experience at Sushi Wasabi in Greenville would damage Wasabi's reputation in Spartanburg. Without a showing of actual or likely confusion, a negative experience at Sushi Wasabi cannot actually damage Wasabi's reputation or goodwill. As such, there could be no damages. For all of these reasons, the first factor weighs against granting a preliminary injunction to Wasabi.

### 2. Likelihood of Harm to the Defendant if the Injunction is Granted

The second factor, like the first, favors the court's denying Wasabi's motion for a preliminary injunction. Wasabi argues that any damages Chai suffers as a result of using "Sushi Wasabi" should be discounted, given that Chai was on notice that Wasabi was seeking to protect its mark before Sushi Wasabi opened in June 2005. This argument is undermined by the fact that Chai also has an arguable basis to use the mark "Sushi Wasabi." Wasabi did not get its South Carolina trademark of "Wasabi" until 2004, two years after Oozora opened Wasabi Japanese Restaurant and Sushi Bar. Even though Wasabi had its mark in 2004, it is undisputed that Oozora obtained the South Carolina trademark registration for "Sushi

---

[4]Wasabi's delay is less excusable given the fact that Wasabi expected Sushi Wasabi to be opened at the end of May and waited until June 9 to file its motion. (Pl.'s Mem. Supp. Prelim. Inj. 5.)

6

Wasabi" (and that Chai was permitted to use it for the Greenville restaurant) before Chai opened Sushi Wasabi. (Id. Ex. 2 (Trademark Registration Certificate).) Hence, due to the South Carolina trademark registration, Chai arguably had a legal right to open and operate its restaurant under the "Sushi Wasabi" mark.

Wasabi argues that it has invested substantial amounts of money in advertising in upstate South Carolina, and that it will be harmed by Chai's use of the "Sushi Wasabi" mark. While that could be true, it is undisputed that forcing Chai to change Sushi Wasabi's name, after opening the restaurant under the name Sushi Wasabi, marketing that name, and paying for signage, menus, etc. would place a substantial financial burden on Chai. Given the speculative nature of the harm to Wasabi, this factor also weighs in favor of denying the preliminary injunction. See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 284 (4th Cir. 2002) (noting that "[t]he entire preliminary injunction inquiry, and particularly the requirement that the district court carefully balance the harms to the parties, is intended to ensure that the district court choose[s] the course of action that will minimize the costs of being mistaken." (internal quotation marks omitted)).

### 3. Likelihood that the Plaintiff will Succeed on the Merits

"When, as here, the balance of hardship does not tilt decidedly in plaintiff's favor then a plaintiff must demonstrate a strong showing of likelihood of success or a substantial likelihood of success by clear and convincing evidence in order to obtain relief." Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 340 (4th Cir. 2001) (internal quotation marks omitted). The court is uncertain which party will ultimately succeed on the merits of this suit, a conclusion that also weighs against the issuance of a preliminary injunction.

"To prove trademark infringement, a plaintiff must show both that it has a valid, protectable trademark and that the defendant's use of a reproduction, counterfeit, copy, or colorable imitation creates a likelihood of confusion." Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 91 (4th Cir. 1997) (internal citation and quotation marks omitted). There are seven factors that should be considered to determine whether there will be confusion between the two trademarks at issue:  (1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity between the two marks, (3) the similarity of the goods or services the marks identify, (4) the similarity of the facilities the parties use in their business, (5) the similarity in the advertising conducted by the parties, (6) the defendant's intent, and (7) actual confusion between the two marks by people in the marketplace. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984).  The last factor, actual confusion, is the most significant. Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 423 (4th Cir. 1998) (noting that "the best evidence of likely confusion is actual confusion.") Wasabi argues that the court should issue a preliminary injunction because the factors above show that there will be confusion between the trademarks, and that Wasabi has the right to use the mark because it was the first to use it.

Chai raises numerous arguments which support its position that the factors above do not weigh in favor of confusion or in favor of Wasabi's likelihood of prevailing on the merits. For example, Chai asserts that "wasabi" is not particularly strong or distinctive, given that it is merely a condiment offered with sushi in Japanese restaurants offering sushi on their menus.  Chai also highlights the lack of evidence that "Wasabi" is a well-known mark in Wasabi's market.  Chai contends that the marks are distinguishable due to Chai's addition of

8

"Sushi" to "Wasabi," which is supported by South Carolina's registering a trademark to Oozora for "Sushi Wasabi." Additionally, Chai claims that Sushi Wasabi and Wasabi advertise in different markets, as Sushi Wasabi is not advertised in Spartanburg. Chai asserts that it had no intent to misappropriate Wasabi's trademark, noting that a related entity, Oozora, used "Wasabi" in its business name in 2002, before learning of Wasabi. (Def.'s Mem. Opp'n Prelim. Inj. 9 & Ex. A (Aff. of Cheng Hai Yap at 2).) Finally, Chai points to the dearth of evidence supporting Wasabi's claim of actual confusion to support its contention that a preliminary injunction should not issue.

Wasabi raises numerous arguments in support of its claim that the usage of "Sushi Wasabi" will lead to likely confusion of consumers. However, as previously noted, Oozora has been granted the right by the South Carolina Secretary of State to operate its restaurant under the mark "Sushi Wasabi." Although Wasabi may prevail at trial, this court cannot conclude at present either that Wasabi is substantially more likely than Chai to succeed on the merits in this case or that the evidence that Wasabi has marshaled is clear and convincing to support its claims. See Microstrategy, 245 F.3d at 340. Moreover, even if the court were to conclude that Wasabi is more likely to prevail at trial than Chai, the other three factors, as set forth above and below, weigh in favor of denying Wasabi's motion.

### 4. The Public Interest

Wasabi argues that actual confusion of consumers in South Carolina between Sushi Wasabi and Wasabi weighs in favor of the court issuing the preliminary injunction. Chai argues that there is no evidence beyond hearsay that consumers have confused the two restaurants, and contends that it uses "Sushi Wasabi" without deceptive intent. Further, Chai

points to South Carolina's registration of the "Sushi Wasabi" mark <u>after</u> registering "Wasabi," and asserts that "the public has been and remains free from deception." (Def.'s Mem. Opp'n Prelim. Inj. 11.) The court finds that Wasabi has produced insufficient evidence in support of its claim that the public has been deceived or will be confused about the names of the two restaurants to support the grant of a preliminary injunction. This factor, therefore, weighs in favor of denying Wasabi's motion.

### III. CONCLUSION

After a careful review of the record in this case, the court finds that the factors weigh against granting Wasabi's motion for preliminary injunction.

Therefore, it is

**ORDERED** that Wasabi's motion for preliminary injunction, Document number 4, is denied.

**IT IS SO ORDERED**.

                                         s/ Henry M. Herlong, Jr.
                                         United States District Judge

Greenville, South Carolina
September 21, 2005